Good morning, your honors. I'm Richard Price, attorney from OMAC, representing the appellant plaintiff in this case. May it please the court. We are here alleging that the Department of Interior has abused its discretion in regard to applying the Code of Federal Regulations to the exclusion of the Indian Preference Act in terms of Mr. Lawrence's ability to obtain the credits that would enhance the annuity which Congress enacted and entitled him to without being deprived of it by application of the Code of Federal Regulations. The government, in its defense, casts Mr. Phillips as a federal employee of the Department of Interior. Mr. Phillips is a member of the Standing Rock Sioux Nation of North Dakota. He spent his 27 years of firefighting activities on the 1.3 million acre confederated Colville tribes in Okanagan and Spokane counties. In that regard, he was entitled to preference for employment with the Bureau of Indian Affairs because of his Indian status. Regardless of the Code of Federal Regulations, regardless of whether he could comply with the Code of Federal Regulations as to who was qualified to be an employee, because of the Reorganization Act and the preferential treatment of Indians, he was entitled to be preferred to be hired. The purpose behind that act was not solely, as the government argues, to imbue the Bureau of Indian Affairs with nothing but Indian employees. It was to allow Indian employees to take control of the agency over which it would direct their own affairs, tribal and individual. But it didn't stop there. It was for Indian economic self-determination. The fact that an Indian could be employed there and have a job was only part of the economic self-determination that was intended by the federal government. And when the federal government adopted by statute the enhancement of a retirement annuity benefit, that was a benefit that accrued to Mr. Lawrence as an Indian member of the Bureau of Indian Affairs. Counsel, let me ask you, you talked about the benefit accruing. Do you contend that the benefit was actually vested at any time before this directive or regulation was promulgated that required the notice that he did not give? I do, Your Honor. And what caused the vesting and when did it occur? Code of Federal Regulations in 1987 adopted a regulation that changed the vesting. Prior to that time, you could apply and you were entitled to the credits for all years of prior service, regardless of when you applied for the benefits as a firefighter. When the Code of Federal Regulations were enacted in 1987 and apparently took effect in 1989, it then limited the number of credit years prior service that could be computed in computing your enhanced annuity benefit to one year prior to your filing. Secretary of Interior, we argue, was under a duty to employ the preferential act to enact special regulations for Indian employees apart from all other federal employees. But before 1987, was there a regulation or a statute that, not that should have been enacted, but that actually was enacted that said these benefits are vested and then that was somehow changed? Or was this a new regulation? This was a new regulation. And the vesting, I believe, is inherent in the fact that you could apply for all prior years of credit service up until this new filing deadline. And because of that, they were vested. After that, the vesting was removed except to the one year prior to filing for the benefits. The Secretary of Interior did not regulate or did not promulgate any special rules for Indian employees taking into consideration their special circumstances and experience, which they are required to do under Preston. By doing that, she relegated the Indians to whom this economic self-determination was promulgated to the same status as every other federal employee. And as Felix Cohen in his 1953 version of federal Indian law noted, the erosion of the preference for Indian treatment was discouraging and something that needed to be addressed. This court in Preston addressed that issue based on the Ogalla Sioux tribe in the Eighth Circuit in which this court relied heavily for the decision in Preston. Secretary of Interior had a duty when you are taking away vested credits for an enhanced retirement benefit right to promulgate special rules for the Indians because of their unique background and special circumstances. It waited 11 years to promulgate the Firefighter Law Enforcement Retirement Task Force, which went around to Indian tribes and for the first time notified them of this new regulation adopted 11 years previously. At that time, Mr. Lawrence, learning for the first time of this regulation, filed within one year of compliance and was rejected to one year's credit prior to his filing because he hadn't filed earlier in compliance with the regulation in effect in 1989, of which he knew nothing. The federal government's argument throughout for both my non-discriminatory claims and discriminatory claims is, look it, we treated him the same as every other federal employee. He was to be treated the same as every other federal employee. How could we do anything wrong? Matt Wagers, the man, the analyst who was in charge of this flirt organization enacted 11 years after this statute came into effect, said that in 1997 is when they started operating to inform Indian and non-Indian employees alike of this benefit. By that time, Indian and non-Indian employees had lost 11 years of their prior year's credit. And he admitted he had no knowledge of the special preference to be entitled to Indians and he treated them in ruling on these applications the same as all other employees under the Code of Federal Regulations. The Secretary of Interior had made, adopted no special regulations as to how an Indian could qualify as a firefighter. The memorandums that were sent out from the Department of Interior that we have printed in the excerpts of the transcript indicate that as late as 1988, the government recognized that information was not getting out and sent memos to superintendents of the various agencies saying, please get information out to your employees about these enhanced benefits. Interestingly, it was addressed to the superintendent and to law enforcement officers and to forestry individuals, but not to firefighters. Why wasn't it addressed to firefighters? Because in the same memo, the Department of Interior recognized, we don't know what the qualifications for firefighters are. So when the notices went out to the agency superintendent to notify Indian members or other members of their right to qualify for the application, they didn't even know who to contact within the agency. Mr. Lawrence fought fires as his primary duty for 27 years on the Colville Indian Reservation. He became the premier firefighter. He had other titles, but his primary duties were firefighters. And contrary to what the government argues, he did ask for reassignment as soon as he went to this conference in 1989, put on by, 1998, put on by the FLIRT organization, and it's in the S.E.R. page one, where he directed to the firefighter specialist, Matthew Wagers, his request for reassignment as a primary firefighter. The special regulations provide that Indians are to be given preference with regard to eligibility, reassignment, transfer, promotion. He asked for it. He didn't get it. He was entitled to have it. From the very first day that he was employed, he had to drive a truck with water tank on it and hoses. He had, any time he went out in the field, he had to carry his firefighting pack. He started out as a ranger, the sole ranger for a large OMAC area of the tribal reservation. He was the first man on the fire, and as I said earlier, he eventually elevated himself to the premier firefighter on the reservation. He had to qualify for a step test every year, which he did. The fact, in terms of suggesting that the enactment was for the economic self-determination of the Indian, you give him the job with a preference. He generates these retirement benefits during his job in that position, but then at the end, when he comes to the retirement benefits, you tell him, oh, by the way, you're not going to hire me. You don't get them because you're under the Code of Federal Regulations. No, you're under special regulations that the Secretary of Interior is required to adopt so that Indians get preferential treatment, and I say that unabashedly because they're required to have it, that they should have been notified as to how they qualify for primary or secondary firefighter status. And they should have been given special provisions not limited to one year back, but to as far back as they provided service. It's just the same in Preston. The Secretary did not adopt any special rules or regulations apart from the Code of Federal Regulations to give the Indian the preference to get his economic self-determination that he was promised. Economic self-determination and labor negotiations nowadays, retirement benefits are one of the most important aspects of those negotiations, even more so in some cases than the actual wages on the day-to-day job. To tell the Indian that, well, you had payment while you were on the job and you were going to be economically self-sufficient, but now when you go into your retirement years, when you're most fragile and most critical of not becoming self-economically supported, you're not going to get the credit you deserve. You're not going to get the credits that would have entitled you to this benefit that Congress intended you to have. I suppose the government might say, well, do we have to write special wage regulations? Special wage regulations? To give maybe higher wages even to the Indian employees compared to the... I don't believe so, Your Honor. Well, it would help economic self-determination. Well, economic self-determination within the wage scales that are available. And if there are positions open that would entitle them to a higher wage scale, they do get preference for that. But to say that if they're in the same position as somebody else and they're to get a higher wage, I don't think that follows. The reason I ask is they're in the same position as other people in that they're subject to a one-year timeline. And I think if your argument's accepted, they will not be subject to the one-year timeline, but the other employees will. That's correct. But the dichotomy here is the government has very cleverly lumped the Bureau of Indian Affairs, which is staffed primarily by Indians, into the civil service retirement system. If they were in the federal retirement system, lack of knowledge of the enactment, even though it's printed in the Federal Register, is not a bar. As long as they did not have actual notice, they are entitled to their benefits. I'm saying in terms of dealing with Indians, you can't segregate them into the civil service retirement system as opposed to the federal retirement system. Indians are to be measured against all federal employees. And to say that federal employee retirement system members can get their full credit benefits for all the years they worked as long as they didn't know about the regulation, but Indians can't because they happen to be over here under the civil service retirement system, is discrimination, abject discrimination. And you have to compare them across the board with all federal employees, not just civil service retirement employees. But even if you decide that they are relegated to only civil service retirement benefits, it's the same as Preston, as Ogalla versus Sue. The individual wanted to apply to be superintendent of an agency. The district court said, well, as long as he meets the civil service requirement qualifications, then yes, along with the other civil service requirement applicants, we'll give him preference and he can be the superintendent. The circuit said, no, he doesn't even have to qualify for the civil service requirements. The 1934 Reorganization Act preferential treatment says the secretary had to write special rules for an Indian applicant that made him preferential to somebody who had higher qualifications under the CFR regulations. That's a hard concept to follow, that we need to give special preference to any members of our societies nowadays. Congress decreed that that's what we are to do. That's why Felix Cohen felt he was concerned that the courts were backing away from that and that we needed to take another look at it. The Preston case issued by this case is filled with wonderful cases from jurisdiction to jurisdiction. The history of this going back as to why the Secretary of Interior was required to write special regulations for an Indian employee to be qualified to be employed by the Indian Health Service. Counsel, you have exceeded your time and we will restore some additional time for rebuttal, but I think we understand the basics of your position. Thank you very much. Thank you, counsel. We'll hear from Mr. Biviano. Good morning and may it please the court, Andrew Biviano on behalf of the United States. I want to excuse my throat if it happens to crack today. I'm fighting a bug. This is an unusual, if not unique, case in which the plaintiff is alleging not discrimination, but, in fact, not enough discrimination. Well, that was true in Preston. Correct. That's why I say it's unusual. But the facts of Preston are much more similar to the precedent in the facts here. This is a truly unique case in that it's alleging that the burden or the duty to give preference to Indians goes far beyond any case that's ever been resolved in this nation. And the Preston case is cited by Mr. Price. There's not a single one that touches on these facts and is going beyond what the clear statutory language of the Indian Preference Act is. Counsel, I'd like to ask you the same question I asked Mr. Price. And that has to do with the status of the benefit accrual before the 1987-1989 regulation was passed. Had Mr. Lawrence's retirement benefits vested by then? And if not, why not? Your Honor, I'd like to remind the Court of the fact that in the initial application of Mr. Lawrence to the Board, the benefits were denied for two reasons, both because they were untimely and because he didn't qualify for benefits in his position. The aspect, that second aspect has been withdrawn, rescinded, but has not been overturned. I'd like to – I submit that that means that that issue has not been resolved in Mr. Lawrence's favor, that he would qualify for these benefits but for the time limit. It's simply been removed from discussion because it's legally removed. Well, I guess I'm struggling with a slightly different concept than – I understand why you've given the answer you've given, but what I'm looking for is whether the statutory structure vested certain rights in people in this general category before the regulation came along, in the ERISA kind of sense, whether benefits were vested, because that might affect our legal analysis of whether the regulation is proper, not just as applied to Mr. Lawrence, but perhaps to non-Indians as well. Your Honor, I don't – I do not believe they were vested. Perhaps they could have been arguably vested in those in primary fight-or-fighting positions where there was no dispute as to their qualification for the benefit. But for those who were not in primary positions, there is no question that there was an application process that had to occur before someone was considered vested or qualified for that benefit. At the heart of this case, I believe, is Mr. Lawrence's assertion that the Indian Preference Act relates to economic self-determination of Indians, and that means that they should be paid as much as they possibly can at any given point in their employment with the United States, with the Bureau of Indian Affairs. And that's simply not the case and not reflected in any of the authority on this issue. If Congress had intended there to be an individualized increased compensation for Indian employees, that certainly could have and would have been done in the actual act itself. As Judge Canby pointed out – So presumably Congress or somebody did intend that firefighters get a better retirement than others. Certainly. Firefighters and law enforcement officers and nuclear workers, recognizing the dangerous work they do, there was a benefit accrued for them. But that's the key to this case, is that the benefit was for firefighters. It was not for Indians. And the Indian Preference Act, as well as Preston, Johnson v. Shlala, and Morton v. Moncari, all said that the limit on the breadth of the preference goes to what was intended for the preference to be. And when you have a statute that clearly says it's for promotion, hiring, promotion, transfer, reassignment, it does not say that we will give Indian employees a higher salary or higher retirement benefits than identically situated co-workers who are non-Indian. That is a very broad leap to take, and it stretches the meaning of the statute past its breaking point. As Your Honor pointed out, that would logically say that they should be paid more than everybody else in their office for the same position, simply because they're  I understand your argument. You do have – it's not as if, at least the way this case is now framed, that he wasn't entitled to this. It's just that he was late applying because he didn't know a lot of it. Your Honor, I would submit that the first question is simply unresolved. The entitlement aspect is not being addressed because of the law. Well, that's what we have to decide. I don't know what you mean by withdrawn. But presumably, if we agreed with your opponent, we would say he's forgiven the untimeliness and we would send it back for further proceedings. Precisely, Your Honor. If there were – if the Court were to hold that the time limit didn't apply, it would have to be sent back, because the record does not say that but for the untimely filing, Mr. Lawrence would have gotten the benefits. The record says – Well, if that's so, then there's – and don't we have to assume that he would be entitled to benefits but for the one reason that's remaining? No, Your Honor. I think what it says is that the Court stopped there, and that if that were – if that – But then who withdrew it? I believe that upon the appeal of the decision, the issuing judge, the MSPB, withdrew the second alternative reason and said, let's just review it on this one because it's unnecessary, it felt, to do the exercise if it was not – if it was moot. If the justification was not necessary, they decided that there's no reason to make that decision. Well, if there's one year, he's entitled to it, even under the regs, isn't it? I mean, didn't he get the last year of this? I apologize for not being a precise member, but I believe that the order was that he was entitled to one year. I don't know. Even that one year, he was not entitled to either because his position was secondary. He only had firefighting during one season of the year, the fire season. His main position was a silviculturist and a forester. One of many, many Federal employees in the forest business who are all called to pick up a shovel when the fire season starts. First, I suppose it could be that his duties were different that last year than they were in other years. It's possible. Again, we don't know because the record says the court stopped at the first reason. Additionally, Mr. Price gives no justification or explanation for the different notice for Indians that he says is necessary under the Act. He refers to the different background and different conditions of Indian people, but doesn't explain what those are, other than I think he makes reference to English being a second language for many Indians. He doesn't give any rates about how prevalent that is, what bilingual status most Indians hold, doesn't even state that he himself treats English as a second language. It certainly doesn't affect constructive notice, which by definition means you didn't actually get notice, so your language was irrelevant. It means that you're on constructive notice, meaning that you had the duty to find that information you could have if you had looked. And there's nothing to say that he couldn't have done that. The trust obligations of the United States have always been limited to treaties between the United States and the tribes and other statutory obligations imposed upon the United States. It has never been to assist every Native American in this country to achieve economic self-determination whenever possible. The cases cited for the proposition, like Loudner or Seminole Nation, very clearly delineate the scope of the United States' burden. In Loudner, it was very clear it was the tribal members' own money and their own trust fund, which the United States affirmatively put itself in the position of trustee to distribute. There, of course, there's a different relationship than simply being an employer. Here, there's no benefits for Native American workers. As can be mentioned, this is for the firefighters. This is not intended to give any preferential treatment to anyone other than those three types of workers, not based on race. Furthermore, and Binkerman clearly holds that even firefighters and law enforcement officers in that case don't have any right to, even with it being for their benefit, to use estoppel as an argument for why the – for waiving the time limits. The case there was the law enforcement officer said, you didn't give us enough notice and you didn't meet your own standard for providing notice. And the court said, while the agency may not have met the – met its own expectation for notice, it does not give an affirmative duty to the plaintiff to waive the – or affirmative right to waive the time requirements. And that same rule applies here. The most that Mr. Lawrence can say is that the agency did not provide as much notice as it wanted to or as it asked some agencies to do. But as in Binkerman, there is discretion in the agency as to who it will notify. If it feels that certain positions don't qualify, it could reasonably hold. There's no point in sending out notice to employees that aren't firefighters in its mind. Well, I understand your argument, but it does seem to me that the agency did much less than it could have here. I mean, somebody dropped the ball. It may not – they may not have done less than they were legally required to do, but they – it seems to me they did less than a good employer would have done. Your Honor, that might be true. I think that reasonable minds could differ on that – that interpretation of agency's actions. But it really isn't relevant to this case in that the – there was no legal duty and it certainly doesn't create any rights for any employee to say that because you didn't do as well as you could have, the promulgated regulation – I think the whole argument of your – of your point, at least as it's presented orally, is based on the Indian Preference Act and saying that because there's a preference to employment, some of the trappings that surround employment fall within that, I think, and that this is one of the trappings, I think. If I understand his argument, that's what he's saying. I would concur, Your Honor, and I think that's important. The best response I can give to that is that it does really give the Indian Preference Act no bounds. I know the – Mr. Lawrence or Mr. Price treats this as straw man I'm creating or a slippery slope argument, but it really isn't. This is the absolute logical conclusion of saying that any time a federal regulation that has no intent or purpose or relation to Indian employees of the government adversely affects an individual Indian's pay rate, it should be waived. That will certainly mean – there's no other explanation than to say that means that if you want to get a higher level on the pay scale, you should get that because you're an Indian and you're not being paid as much as you could be. It means that any time there's a cap on any sort of economic benefit that occurs to all federal employees equally, Indians are exempt from that. And the clear intent and scope of the Preference Act and how it's been interpreted ever since it's been promulgated in the 30s is to limit it to those aspects of employment that increase the numbers of Indians in the Bureau of Indian Affairs in order to regulate their own affairs. Well, the reg expanded it. I mean, it was just not initial hiring, but promotion. And I don't know that that increases the number necessarily, but it – One could say it increases the effectiveness of the self-regulation that Indians have to be higher up in the department, certainly. But it's all about getting the job. It's about getting as many Indians as possible, similar to veterans' preferences, getting as many veterans as possible employed by the – Transfer. Preference and transfer, I don't know that that would – Giving Indians the leg up in moving up in the department and getting a new position if they desire that, there's nothing about that that relates to getting them better retirement benefits than the guy sitting next to them who's not an Indian. If there's another employee exactly situated as Mr. Lawrence, he would not get these benefits, no question. And Mr. Lawrence doesn't challenge stern and menendez, the cases that say that this was the right result legally, that you missed the deadline, and I'm sorry, but that's the way the system works, that when notice is given in the Federal Register, you're on constructive notice of that. And then in discrimination claims, he makes no disparate treatment claim. He concedes that this is the, in fact, completely level treatment for everybody. And disparate impact, he uses a directory to say that Mr. Lawrence's opinion, these people are Indian, and my opinion, these people are in firefighter positions. Then he says that there's no evidence of what percentage of them actually are Indian. It's just based on his opinion, based on their name only, that they are in fact Indian. And it doesn't compare it to anyone else. It doesn't compare the Indian employees' rate of receiving these benefits to anybody else. And that would open the door to absurd results, and that any time any agency has a majority of one population, ethnically that population can always say that whenever anything bad happens to their budget, we're being discriminated against because there's more of us than anyone else. I don't think I need to go too far into that, but obviously that wouldn't work because the Caucasians obviously would have the catbird seat for claiming that whenever they're the majority in a bureau, they're discriminated against whenever layoffs happen. Unless the panel has any further questions, I think that pretty much sums up the government's position in the briefing. I don't believe we have any more questions. Thank you. Thank you. Mr. Price, we'll restore three minutes for you for rebuttal time. Mr. Philip Lawrence applied in 1989, immediately after the FLIRT meeting advising him of the filing for the requirements, the annuity requirements, in part at SER page one. I claim primary firefighting duties from beginning of my tour of duty with the BIA, June 13, 1967 to the present, and he gets comp back to 1970 through three, which includes his military service. He's applying for reassignment, which falls within section 12 of the Indian Reorganization Act, and as such is to be accorded that treatment. We're asking the same as in Preston, that the Secretary of Interior was required to promulgate rules specially for the filing of these benefits for Indians separate and apart from the Code of Regulations by virtue of the overlay of the Indian Preference Act. That's what Oglala, the Eighth Circuit case, said. To not do that is to read the Preference Act out of existence in favor of the Code of Federal Regulations. What operative words in the Preference Act do you contend are invoked with regard to retirement benefits? In terms of employment, transfer, assignment, promotion. Which of those does retirement benefits relate to? Is it a transfer or is it a promotion? It's an assignment, a reassignment. I claim primary firefighter duties. He's asking for the reassignment to the firefighter status to which he has been informed he's entitled to special benefits if he is accorded that assignment. But in terms of that assignment, the Secretary of Interior has promulgated no rules as to who is a firefighter. At page 187 of the excerpts of the record is the bulletin from the United States Department of Interior addressed to area personnel offices, acting personnel officer, chief division of forestry, area foresters, B.I. director, chief division of law enforcement, area law enforcement officers. Not one list there says firefighters. And the reason it doesn't say firefighters is on page 2 on 188 of the excerpt of the record, at this time the Bureau has no special qualifications or medical standards or maximum entry age for firefighters. Department of Interior didn't know who their firefighters were or how to qualify them. Didn't have any special qualifications. Here's a man who says Congress says he's entitled to annuity benefits. Secretary of Interior doesn't even know how to qualify who's a firefighter to obtain those benefits. And when he asks for reassignment to the primary firefighter status, based on the excerpts of record, which show that he was primarily a firefighter on that reservation for all 27 years of employment, in terms of being able to hire and fire employees, operate heavy equipment, first man on the job, and he had the highest ratings every year as a firefighter on his application, review application. So until a Secretary of Interior adopts special regulations for Indians, just as it was required to do in Preston, that vesting that was accorded up until 1989 continued. It's never been revoked as to Indians. The Secretary of Interior has not adopted the regulations she's required to in order to determine whether Mr. Lawrence would qualify as a firefighter and be entitled to qualify based on actual knowledge of the regulation, not constructive knowledge through the Federal Register, just like Federal employee systems. How can we, in terms of saying that we are giving preference to Indians, deprive them of the benefits they've earned, not special benefits, benefits they've earned equal with every other employee, deny them those benefits because of a filing requirement they didn't know about, which Federal employee retirement system employees get because they didn't have actual knowledge, but civil service retirement employees don't get because of court interpretations that they had constructive notice. I don't think court interpretations can invalidate the statutory adoption that these annuity enhanced benefits were to be available to retain skilled employees. You overlay that with the Indian Preferential Act, and he's entitled to the benefits to date, and at least until the Secretary of Interior adopts special regulations whereby he can be evaluated as to whether he complies and whether the Secretary of Interior says, we don't believe one-year limitation of filing is appropriate for Indians because they're entitled to special preference. It ought to be actual notice for Indians. Thank you, counsel. The case just argued is submitted. We very much appreciate the arguments of both counsel. They've been very helpful. And we stand adjourned. All rise. This court for discussion stands adjourned. Thank you.
judges: Canby, Graber, Gould